UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

                             Plaintiff,

    -against-

PROFESSIONAL SECURITY ASSOCIATES,
INC., EDWARD COLVELL, and FOFO's TOY,
INC. d/b/a THE EMPORIUM,

                            Defendants.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
16-CV-6674 (SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court is Plaintiff Philadelphia Indemnity Insurance Company's ("PIIA" or "Plaintiff") motion for default judgment against Defendant Professional Security Associates, Inc. ("PSA").[1] *See* Docket Entry ("DE") [22]. By way of Complaint filed on December 2, 2016 (the "Complaint"), PIIA commenced this diversity action against Defendants PSA, Edward Colvell ("Colvell"), and FoFo's Toy, Inc. d/b/a The Emporium ("FoFo's") pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure seeking, among other things, a declaratory judgment that it has no duty to defend or indemnify its insured, PSA, in connection with claims made in the lawsuit captioned *Edward J. Colvell v. Fofo's Toy, Inc. d/b/a The Emporium*, Index No. 060853/2014 (N.Y. Sup. Ct.) (the "Underlying Action"). *See* DE [1]. Colvell filed an Answer on December 23, 2016, *see* DE [8], but both PSA and FoFo's failed to timely answer or otherwise respond to the Complaint. On April 12,

---

[1] The parties have consented to this Court's jurisdiction for all purposes pursuant to 28 U.S.C. § 636. *See* DE [28].

1

2017, at Plaintiff's request, the Clerk of the Court entered Certificates of Default against PSA and FoFo's. *See* DEs [17], [18]. PIIA then filed the instant motion for default judgment against PSA on July 6, 2017. *See* DE [22]. For the reasons set forth herein, Plaintiff's motion is denied without prejudice to renewal pending the outcome of the case against Colvell.

I.  **BACKGROUND AND PROCEDURAL HISTORY**[2]

   A. **The PIIC Policy**

Plaintiff issued a Commercial General Liability Policy to PSA bearing policy number PHPK957183 (the "Policy") for the period of December 14, 2012 through December 14, 2013. *See* Declaration of Edward Fogarty ("Pl.'s Decl."), Exhibit ("Ex.") B, DE [23-2]. The Policy provides coverage for losses resulting from personal bodily injury with a limit of $1 million per occurrence. *Id.* Among other conditions, the Policy prescribes a number of "[d]uties" on the part of an insured "[i]n [t]he [e]vent [o]f [o]ccurrence, [o]ffense, [c]laim [o]r [s]uit[,]" including requirements that the insured promptly notify PIIC of any claim or suit, provide Plaintiff with necessary documentation, and cooperate with PIIC in connection with defending the claim or suit. *See id.* Section IV.

   B. **The Underlying Action**

On or about April 2, 2013, PSA's chief executive officer, Phil Fogarty ("Fogarty"), informed Plaintiff via email of a potential lawsuit arising from bodily

---

[2] The facts set forth herein are taken from the Complaint, the declarations submitted in connection with the motion for default judgment, and the exhibits annexed thereto, and are accepted as true for the purpose of this motion.

2

injuries allegedly sustained by Colvell on March 17, 2013 while PSA was performing security services at The Emporium, a nightclub owned by FoFo's. *See* Pl.'s Decl., Ex. C. Immediately after learning of the possible suit, PIIC began to investigate the alleged incident. *See* Complaint ¶ 22. On multiple occasions throughout 2013, Plaintiff conferred with Fogarty in an effort to obtain additional information concerning the incident and determine whether a lawsuit had in fact been filed against PSA. *See id.* ¶ 23. In mid- to late-2013, however, PSA ceased communicating with PIIC entirely. *See id.* ¶ 27. Between September 2013 and February 2014, Plaintiff made numerous attempts to contact PSA via both telephone and email, all of which went unanswered. *See id.* ¶ 29.

Colvell commenced the Underlying Action against FoFo's and PSA in the Supreme Court of the State of New York, County of Suffolk, on February 10, 2014. *See* E-Filed Verified Complaint, Pl.'s Decl., Ex. A, DE [23-1] (the "Underlying Action Complaint"). Colvell alleges in the Underlying Action Complaint that security officers employed by PSA detained, assaulted, battered, and falsely arrested him while he was lawfully present at The Emporium. *See id.* ¶¶ 31-22. Colvell claims he sustained bodily injury and emotional harm as a result of the officers' conduct. *See id.* ¶¶ 33, 41.

PSA was served with a summons and the Underlying Action Complaint through the Secretary of State of the State of New York on or about March 21, 2014 and via mail on May 15, 2014. *See id.* ¶¶ 31, 32. Following service, however, PSA did not advise Plaintiff that suit had actually been filed against it; rather, PIIA

3

learned of Colvell's claims against PSA from its own search of the court docket. *See id.* ¶¶ 33, 34. On May 27, 2014, Plaintiff again contacted Fogarty to inform him that claims had been asserted against PSA and to discuss representation of PSA in connection with the lawsuit. *See id.* ¶ 35; Pl.'s Decl., Ex. D. PIIC then retained counsel to represent PSA in the Underlying Action subject to a reservation of rights. *See* Complaint ¶ 36.

On or about July 9, 2014, counsel for PSA visited the company's last known address and informed Plaintiff that this location was an empty storefront with unopened mail present dating back to May 31, 2014. *See id.* ¶ 37. Thereafter, counsel located Fogarty's wife, Christine Fogarty, who stated that PSA had moved from its original address but, apparently, provided no further information. *See id.* ¶ 38. PIIC also retained a private investigator in an attempt to locate PSA and Fogarty and to obtain their cooperation in connection with the Underlying Action, but such efforts were unsuccessful. *See id.* ¶ 39.

By letters dated October 7, 2014 and September 8, 2015, Plaintiff once again requested PSA's cooperation, informed PSA that its continued absence was prejudicing PIIC's ability to defend the Underlying Action, and warned PSA that Plaintiff would be forced to disclaim coverage for the incident at issue under the Policy unless PSA contacted PIIA. *See id.* ¶ 40; Pl.'s Decl., Ex. E. In addition, Plaintiff informed PSA that the court would strike PSA's pleadings if no discovery was produced and that this would prejudice Plaintiff's ability to defend the Underlying Action. *See* Complaint ¶ 41.

4

In light of PSA's continued failure to respond or cooperate, on or about September 22, 2015, PIIA sent a letter to PSA explaining, among other things, that Plaintiff was disclaiming coverage for the Underlying Action under the Policy and informing PSA that PIIA would no longer pay for its defense. *See* Complaint ¶¶ 43, 44; Pl.'s Decl., Ex. F. On December 17, 2015, Justice Joseph A. Santorelli granted an application filed by counsel assigned to defend PSA in the Underlying Action requesting leave to withdraw. *See* Declaration of Zachary M. Beriloff, DE [33], Ex. 1. Subsequently, on September 29, 2016, Justice Gerard W. Asher entered an Order striking PSA's Answer in the Underlying Action. *See id.*, Ex. 2.

C. **The Instant Declaratory Judgment Action**

Plaintiff filed its Complaint in this matter on December 2, 2016 seeking, among other things, a declaratory judgment that it has no duty to defend or indemnify PSA in the Underlying Action. *See* DE [1]. PIIA effectuated service of the Summons and Complaint upon PSA on December 21, 2016 after delivering a copy of such pleadings to the Secretary of State of the State of New York, affixing copies to the door of PSA's last known business address, and sending a copy to PSA via first class mail. *See* DE [9]; Pl.'s Decl., Exs. H-J. After PSA failed to timely answer or otherwise respond to the Complaint, Plaintiff requested, and the Clerk of the Court entered, default against PSA on April 12, 2017. *See* DEs [16], [18].

On July 6, 2017, PIIA filed the instant motion for default judgment against PSA. *See* DEs [22], [23]. Plaintiff served its motion papers upon both Colvell and PSA on the following day, July 7, 2017. *See* DE [24]. On August 25, 2017, Colvell

5

submitted opposition to Plaintiff's motion for default judgment. *See* DEs [33], [34]. PSA, however, having not appeared in the action, did not oppose PIIA's motion. Following oral argument on October 30, 2017, this Court requested supplemental briefing on the issue of whether Colvell had standing to oppose Plaintiff's motion for default judgment against PSA. *See* DE [36]. Colvell filed a supplemental letter brief on November 3, 2017, and PIIA submitted a response thereto on November 13, 2017. *See* DEs [37], [38].

## II. LEGAL STANDARD

Motions for default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure, which provides for a two-step process. *See* Fed. R. Civ. P. 55; *Priestley v. Headminder*, Inc., 647 F.3d 497, 504–05 (2d Cir. 2011). Initially, the moving party must obtain a certificate of default from the Clerk of the Court. *See* Fed. R. Civ. P. 55(a). Once the certificate of default is issued, the moving party may apply for entry of a default judgment. *See* Fed. R. Civ. P. 55(b).

"A defendant's default is an admission of all well-pleaded allegations in the complaint except those relating to damages." *Tudor Ins. Co. v. RAL Indus., Inc.*, No. 07-CV-2733, 2008 WL 977195, at *1 (E.D.N.Y. Apr. 9, 2008). However, "[a] party is not entitled to a default judgment as a matter of right simply because its adversary fails to answer or otherwise respond to a complaint." *First Specialty Ins. Corp. v. Diontech Consulting, Inc.*, No. 10-CV-2559, 2012 WL 748619, at *3 (E.D.N.Y. Mar. 7, 2012). Rather, to determine whether to grant a motion for default judgment, a court should consider: "(i) whether the defendant's default was willful; (ii) whether the

6

defendant has a meritorious defense; and (iii) the level of prejudice to the non-defaulting party if the motion is denied." *Fed. Ins. Co. v. CAC of NY, Inc.*, No. 14-CV-4132, 2015 WL 1198603, at *3 (E.D.N.Y. Feb. 5, 2015), *report and recommendation adopted*, No. 14-CV-4132, 2015 WL 1198423 (E.D.N.Y. Mar. 16, 2015).

Courts in the Second Circuit have "cautioned that a default judgment is an extreme remedy that should only be granted as a last resort." *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009) (citing *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981)). Thus, "the dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

### III. DISCUSSION

Plaintiff argues that a default judgment is warranted because: (i) PSA's default demonstrates willfulness; (ii) PSA has no meritorious defense; and (iii) PIIA would be prejudiced if its motion were denied. *See* Memorandum of Law in Support of Plaintiff's Motion for Default Judgment Against Defendant, Professional Security Associates, Inc., DE [23-13], at 11. In opposition, Colvell contends that Plaintiff's motion should be denied because PSA has a meritorious defense to this action, namely, that PIIA's disclaimer to PSA was untimely. *See* Memorandum of Law in Opposition to the Plaintiff's Motion for Default Judgment Against Defendant Professional Security Associates, Inc., DE [33-3], at 3. With respect to the issue of

7

standing, PIIA asserts that Colvell's opposition is improper because he is not the defaulting party and he cannot answer or provide a defense for PSA. *See* Memorandum of Law in Further Support of Plaintiff's Motion for Default Judgment Against Defendant, Professional Security Associates, Inc., DE [34-4], at 2. In response, Colvell claims that he has standing to oppose the motion for default judgment because his rights will be affected by the Court's decision. *See* DE [37].

As a preliminary matter, the Court must determine not only whether Colvell may properly oppose Plaintiff's motion for default judgment, but, perhaps more importantly, whether he has standing to defend this declaratory judgment action in any manner. Section 2201(a) of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Pursuant to Rule 57 of the Federal Rules of Civil Procedure, the declaratory judgment remedy may be used in the federal courts. Fed. R. Civ. P. 57; *see Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 351 (3d Cir. 1986).

In *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 513 (1941), the United States Supreme Court held that a "case or controversy," within the meaning of the Declaratory Judgment Act, existed between an insurer and an injured party in a declaratory judgment action arising from an underlying state court

action. The Third Circuit recently elaborated upon the principle established in *Pacific Coal* as follows:

> "[I]n a declaratory judgment action concerning the scope of an insurance policy, 'the injured party has an independent right to present its case upon the ultimate issues, apart from that of the insured, because in many of the liability insurance cases, the most real dispute is between the injured third party and the insurance company, not between the injured and oftentimes impecunious insured.'"

*Auto–Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 n.7 (3d Cir. 2016) (quoting *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 319 (3d Cir. 2011)); *see Penn Am. Ins. Co. v. Valade*, 28 F. App'x 253, 257 (4th Cir. 2002) ("When an insurer initiates a declaratory judgment action against both an injured third party and its insured, the injured third party acquires standing—independent of that of the insured—to defend itself in the declaratory judgment proceeding."); *Hawkeye–Sec. Ins. Co. v. Schulte*, 302 F.2d 174, 177 (7th Cir.1962) ("It would be anomalous to hold . . . that an actual controversy exists between [an injured third party] and [an insurer] and yet deny [the injured third party] the right to participate in the controversy."). *Pacific Coal* and its progeny therefore dictate a finding here that a "case or controversy" exists between Plaintiff and Colvell, and that Colvell consequently has standing to defend himself in this action.

It follows from this determination that Colvell also has standing to oppose PIIA's motion for default judgment. That is not to say, however, that Colvell may answer for or otherwise represent PSA's interests in the litigation—certainly he cannot. Rather, Colvell's standing to defend himself in this action is "independent of that of the insured." *Valade*, 28 F. App'x at 257. It is thus reasonable to conclude

9

that Colvell can oppose Plaintiff's motion only insofar as he seeks to reserve his rights to defend this case on the merits.[3] Based upon this conclusion, the Court is of the opinion that the conventional three-factor default judgment test is not suitable for declaratory judgment cases such as this one in which the insured is in default but the injured party has in fact appeared. Therefore, the Court will not address the parties' arguments concerning the timeliness of Plaintiff's disclaimer at this juncture. *See Nat'l Cas. Co. v. Mitchell*, No. 2:16-CV-00576, 2016 WL 3945736, at *2 (S.D.W. Va. July 19, 2016) ("I find that the request for a declaration of legal rights is best considered on the merits via the adversarial process with the non-defaulting defendants.").

Instead, the Court will exercise its discretion to deny PIIA's motion "without prejudice to its right to reinstate the motion if and when it successfully overcomes the proffered defense that its disclaimer of coverage was untimely." *Nat'l Cas. Co. v. Gateway Acoustics Corp.*, No. 12-CV-5920, 2014 WL 1330851, at *5 (E.D.N.Y. Mar. 31, 2014). Indeed, this approach, which has been widely adopted, "will allow the validity of [Plaintiff's] claim for declaratory relief to be determined on the merits through adversarial testing without unduly prejudicing [Colvell's] interest in such relief should [he] prevail on the merits." *Id.*; *see Nat'l Cas. Co. v. Mitchell*, No. 2:16-

---

[3] Even if Colvell had failed to oppose Plaintiff's motion, and default judgment were entered, his right to recover from PIIA would nevertheless be reserved because an "injured third party is not bound by the default judgment and is entitled to defend on the merits in the declaratory judgment proceeding." *Scottsdale Ins. Co. v. Bounds*, No. CIV. BEL-11-2912, 2012 WL 1576105, at *5 (D. Md. May 2, 2012) (citation and internal quotation marks omitted). Moreover, Colvell would still retain his statutory rights to seek damages from Plaintiff pursuant to N.Y. Ins. Law § 3420.

CV-00576, 2016 WL 3945736, at *2 (S.D. W. Va. July 19, 2016) ("It would be a waste of judicial resources to carefully consider whether the requested declaration is appropriate in the default judgment context only to then consider the factually and legally identical issue as defended by the [non-defaulting parties]."); *Tenn. Farmers Mut. Ins. Co. v. Tim W. Smith Props.*, LLC, No. 3:11–CV–57, 2012 WL 956182 (E.D. Ark. Mar. 21, 2012) ("In a multiple-defendant case, default judgment against one defendant should be avoided if the default judgment could create inconsistent and unsupportable results as to the non-defaulting defendants." (internal quotation marks and citation omitted)); *Stillwater of Crown Point Homeowner's Ass'n v. Kovich*, No. 2:09–CV–157, 2010 WL 1541188, at *1 (N.D. Ind. Apr. 15, 2010) ("Because granting the motion for default judgment [against one defendant] would risk the possibility of inconsistent adjudications with respect to the remaining nondefaulting parties, Plaintiffs' motion for default judgment is [denied] at this time."); *see also Medicus Ins. Co. v. Pellegrini*, No. CV 3:15-6015, 2016 WL 5661018, at *2 (S.D. W. Va. Sept. 28, 2016) (declining to enter default judgment against insurer in declaratory judgment action where injured party appeared and was defending the matter); *Nautilus Ins. Co. v. I.L.S. Gen. Contractors, Inc.*, 369 F. Supp. 2d 906, 909 (E.D. Mich. 2005) (denying motion for default judgment against the only defaulting defendant due to the "potential for inconsistent judgments" in the event that the remaining defendants prevailed); *cf. Bounds*, 2012 WL 1576105, at *5 (recommending default judgment against insurer but acknowledging that the declaratory judgment action would nevertheless proceed on the merits against the injured party).

## IV. CONCLUSION

For the reasons set forth above, PIIA's motion for default judgment is denied without prejudice to renewal pending the outcome of the case against Colvell.

Dated: Central Islip, New York
       March 30, 2018                                   **SO ORDERED**

                                                        _s/ Steven I. Locke_
                                                        STEVEN I. LOCKE
                                                        United States Magistrate Judge